FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    Plaintiff-Appellee,

v.

KONILETI LATU,
    Defendant-Appellant.

No. 05-10815
D.C. No.
CR-04-00387-DAE
OPINION

Appeal from the United States District Court
for the District of Hawaii
David A. Ezra, District Judge, Presiding

Argued and Submitted
September 12, 2006—San Francisco, California

Filed March 19, 2007

Before: Ferdinand F. Fernandez, William A. Fletcher, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Rawlinson

## SUMMARY

### Criminal Law and Procedure/Immigration

The court of appeals affirmed a judgment of the district court in part, reversed in part, and remanded. The court held that because a defendant charged with firearm possession under 18 U.S.C. § 922(g)(5)(A) met the definition of an alien "illegally or unlawfully" in the United States as interpreted by the administrative agency charged with enforcing the statute,

and because his filing of an application for adjustment of status prior to being charged did not legalize his presence, a district court's denial of his motion to dismiss was proper.

Appellant Konileti Latu was charged in district court in Hawaii with two counts of illegal possession of a firearm in violation of §§ 922(g)(5)(A) and 922(g)(5)(B) (possession while under non-immigrant visa), respectively. Latu moved to dismiss, arguing that: (1) as applied to him, § 922(g)(5)(A) exceeded congressional authority under the Commerce Clause; (2) because he had filed a non-frivolous application for adjustment of status after marrying a United States citizen and was allowed to remain in the United States during the pendency of that application, he was not "illegally or unlawfully in the United States;" and (3) § 922(g)(5)(B) violated the equal protection and substantive due process clauses of the Fifth Amendment. The district court denied the motions, and Latu pleaded guilty, reserving the right to appeal the denial of the motions.

Latu appealed; the government conceded error regarding Latu's conviction under § 922(g)(5)(B).

[1] The Ninth Circuit has repeatedly upheld § 922(g), both facially and as applied, in the face of Commerce Clause challenges. [2] Section 922(g) contains a jurisdictional element, specifically requiring that Latu's possession be in or affecting commerce. The presence of the jurisdictional element satisfies Commerce Clause concerns. [3] Congress has rationally concluded that possession of a homemade machine gun manufactured intrastate could substantially affect interstate commerce in machine guns. The *de minimis* character of each individual possession is irrelevant where, as in Latu's case, possession is regulated as part of a general regulatory statute that substantially relates to interstate commerce in firearms.

[4] To sustain a conviction under § 922(g)(5)(A), the government had to prove that, on the date he was found to be in

possession of a gun, Latu was illegally or unlawfully in the United States. **[5]** The Bureau of Alcohol, Tobacco, and Firearms (ATF) is charged with administering § 922. As the statute is silent as to the definition of "illegally or unlawfully in the United States," the ATF's interpretation was entitled to deference. Under the applicable ATF regulation, 27 C.F.R. § 478.11(b), aliens who are unlawfully in the United States are not in valid immigrant, nonimmigrant, or parole status. This includes any alien who is a nonimmigrant and whose authorized period of stay has expired or who has violated the terms of the nonimmigrant category in which he or she was admitted. **[6]** Absent a statute preventing Latu's removability upon the filing of his application for adjustment of status, the court of appeals could envision no interpretation that rendered Latu's presence anything other than illegal or unlawful. As applied to the facts of his case, Latu was a nonimmigrant whose authorized period of stay has expired and thus he met the literal definition of the term "illegally or unlawfully in the United States." **[7]** Because Latu met the definition of an alien "illegally or unlawfully" in the United States as interpreted by the administrative agency charged with enforcing the statute, and because the filing of an application for adjustment of status did not legalize Latu's presence, the district court's denial of Latu's motion to dismiss that count of the indictment had to be affirmed.

**[8]** Because the government confessed error regarding Latu's conviction under § 922(g)(5)(B), Latu's contentions regarding the constitutionality of that statutory provision did not need to be addressed. Latu's conviction for violating § 922(g)(5)(B) had to be reversed, and the case had to be remanded for resentencing.

## COUNSEL

Peter C. Wolff, Jr., Federal Public Defender; Donna M. Gray, Assistant Federal Public Defender, Honolulu, Hawaii, for the appellant.

Edward H. Kubo, Jr., United States Attorney; Marshall H. Silverberg, Assistant U.S. Attorney, Honolulu, Hawaii, for the appellee.

## OPINION

RAWLINSON, Circuit Judge:

Konileti Latu (Latu), pled guilty to two counts of illegal possession of a firearm in violation of 18 U.S.C. § 922(g)(5)(A) and § 922(g)(5)(B), respectively. Latu reserved the right to appeal the district court's denial of three motions to dismiss. As he did before the district court, Latu contends that the statute, as applied to him, is unconstitutional under the Commerce Clause of the United States Constitution. He also contends that, on the date he possessed the firearm, he was not "illegally or unlawfully in the United States" under a proper interpretation of § 922(g)(5)(A). He further argues that § 922(g)(5)(B) violates the equal protection and substantive due process clauses of the Fifth Amendment.

Because we conclude that § 922(g)(5)(A) is constitutional and was properly applied in Latu's case, we affirm Latu's conviction on Count One. Due to the government's confession of error regarding Latu's conviction for violating § 922(g)(5)(B), we reverse the conviction on Count Two and remand for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

Latu entered the United States on October 9, 2002, and was required to depart on or before April 8, 2003. He remained in the country beyond this date, and married a United States citizen. On or about July 21, 2003, Latu filed an INS Form I-485 application for adjustment of status. Under the current immigration statutes, Latu's pending I-485 application for adjust-

ment of status did not affect his removability. *Cf.* 8 U.S.C. § 1160(d) (prohibiting removal of persons who have applied for adjustment of status on the basis of their status as seasonal agricultural workers).

On May 15, 2004, officers of the Maui Police Department discovered Latu in possession of a handgun, which had been manufactured in California and transported in interstate commerce before reaching Hawaii. At the time the weapon was found, the INS had not acted on Latu's application for adjustment of status.

Latu was subsequently charged with two offenses. Count One charged Latu with possessing a firearm in and affecting interstate commerce while being an alien who was illegally or unlawfully in the United States, in violation of 18 U.S.C. § 922(g)(5)(A). Count Two charged Latu with possessing the same firearm in and affecting interstate commerce while being an alien who had been admitted to the United States under a non-immigrant visa, in violation of 18 U.S.C. § 922(g)(5)(B).

Latu filed three motions to dismiss. In his first motion, Latu argued that, as applied to him, § 922(g)(5)(A) exceeded congressional authority under the Interstate Commerce Clause of the United States Constitution. In his second motion to dismiss, Latu asserted that, because he had filed a non-frivolous application for adjustment of status and was allowed to remain in the United States during the pendency of that application, he was not "illegally or unlawfully in the United States." In his third motion to dismiss, Latu contended that § 922(g)(5)(B) violated the equal protection and substantive due process clauses of the Fifth Amendment.

In two separate orders, the district court denied Latu's motions. Latu subsequently entered conditional pleas of guilty on both counts, preserving the right to appeal the district court's orders denying his motions to dismiss.

## STANDARDS OF REVIEW

We review a district court's denial of a motion to dismiss an indictment on constitutional grounds *de novo*. *United States v. Bueno-Vargas*, 383 F.3d 1104, 1106 (9th Cir. 2004). Questions of statutory interpretation are also reviewed *de novo*. *Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1079 (9th Cir. 2005).

## I.

## COMMERCE CLAUSE

Latu contends that § 922(g), as applied to him, represents an unconstitutional extension of Congress' power to regulate interstate commerce as articulated in *United States v. Lopez*, 514 U.S. 549 (1995) and *United States v. Morrison*, 529 U.S. 598 (2000). In *Lopez*, 514 U.S. at 551, the United States Supreme Court held that the Gun Free School Zones Act of 1990, which "made it a federal offense for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone," exceeded congressional authority to regulate commerce. In so doing, the Court determined that "possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." *Id.* at 567. Additionally, the Court reasoned that the defendant had not "recently moved in interstate commerce, and there [was] no requirement that his possession of the firearm have any concrete tie to interstate commerce." *Id.*

In *Morrison*, 529 U.S. at 613, the Supreme Court similarly held that a statute providing a civil remedy for victims of gender-motivated violence exceeded congressional authority. The Court noted that "[g]ender-motivated crimes are not, in any sense of the phrase, economic activity." *Id.* Additionally, like the act at issue in *Lopez*, the law at issue "contain[ed] no

jurisdictional element establishing that the federal cause of action is in pursuance of Congress' power to regulate interstate commerce." *Id.*

[1] Latu contends that § 922(g), like the statutes involved in *Lopez* and *Morrison*, contains an insufficient nexus to interstate commerce. However, Latu implicitly concedes the futility of his argument, by noting that he raised the issue primarily to preserve it for *en banc* or Supreme Court review. Latu's implicit concession is well-founded, as we have repeatedly upheld § 922(g), both facially and as applied, in the face of Commerce Clause challenges. *See, e.g., United States v. Hanna*, 55 F.3d 1456, 1461-62 (9th Cir. 1995), *as amended*; *United States v. Jones*, 231 F.3d 508, 514-15 (9th Cir. 2000); *United States v. Davis*, 242 F.3d 1162, 1163 (9th Cir. 2001); *United States v. Rousseau*, 257 F.3d 925, 932-33 (9th Cir. 2001). We also recently rejected a challenge similar to Latu's, stating that "[t]his court has . . . expressly and repeatedly rejected defendant's reading of the law, even after *Morrison* and *Lopez* were decided." *United States v. Younger*, 398 F.3d 1179, 1193 (9th Cir. 2005) (citations omitted).

[2] Unlike the statutes at issue in *Lopez* and *Morrison*, § 922(g) contains a jurisdictional element, specifically requiring that Latu's possession be "in or affecting commerce." The presence of the jurisdictional element satisfies the Commerce Clause concerns articulated in *Lopez*. *See Hanna*, 55 F.3d at 1462 n.2. Indeed, we recently upheld the very statutory section originally overruled in *Lopez*, on the basis that the statute had since been amended to contain a jurisdictional provision. *See United States v. Dorsey*, 418 F.3d 1038, 1046 (9th Cir. 2005).

[3] Latu's remaining argument, that § 922(g) cannot be justified as having a substantial effect on interstate commerce, is equally unavailing. We held in *United States v. Stewart*, 451 F.3d 1071, 1073, 1078 (9th Cir. 2006), that Congress rationally concluded that possession of a homemade machine gun

3280        UNITED STATES V. LATU

manufactured intrastate could substantially affect interstate commerce in machine guns. The *de minimis* character of each individual possession is irrelevant where, as in this case, possession is regulated as part of a general regulatory statute that substantially relates to interstate commerce in firearms. *See id.* at 1078.

For the foregoing reasons, we affirm the district court's denial of Latu's motion to dismiss on Commerce Clause grounds.

## II.

## LATU'S CONVICTION UNDER § 922(g)(5)(A) (COUNT ONE)

[4] Latu was found to be in possession of a handgun on May 15, 2004. To sustain a conviction under § 922(g)(5)(A), the government must prove that, on that date, Latu was "illegally or unlawfully in the United States."[1] Latu concedes that he was required to depart the United States on or before April 8, 2003. Although he remained in the country beyond this date, he married a United States citizen, and on or about July 21, 2003, filed an INS Form I-485 application for adjustment of status.

---

[1] § 922(g)(5)(A) reads as follows:

. . .

(g) It shall be unlawful for any person - -

. . .

(5) who, being an alien —

(A) is illegally or unlawfully in the United States . . .

. . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Latu contends that when he filed a non-frivolous application for adjustment of status, and was allowed to remain in the United States during the pendency of his application, he was authorized to be in the country and, therefore, not "illegally or unlawfully in the United States."

### A.

### Circuit Court Interpretations

Latu's position is supported by language in Ninth and Tenth Circuit cases. In *United States v. Bravo-Muzquiz*, 412 F.3d 1052, 1054 (9th Cir. 2005), we stated:

> In *United States v. Garcia*, 875 F.2d 257, 257-58 (9th Cir. 1989), we held that an alien who had not been legally admitted to enter the United States and who had not applied for legal status at the time he possessed a firearm was "illegally or unlawfully in the United States" for purposes of section 922(g)(5). Implicitly this recognizes that had Garcia applied for legal status prior to his possession of the firearm he would not have been at that time an alien illegally or unlawfully in the United States . . . .

The *Bravo-Muzquiz* panel also concluded that "[t]he jury instruction provided by the district court defining the meaning of an alien illegally or unlawfully in the United States was a correct statement of the law." *Id.* at 1055. The jury instruction read, in pertinent part:

> An alien is in the United States illegally and unlawfully if the alien is in the United States without authorization. An alien who has filed an application for legalization of his immigration status is not illegally or unlawfully in the United States while the application is pending. This is so because an alien is

authorized to remain in the United States while the application for legalization is pending.

*Id.* at 1055 n.1.

In *United States v. Hernandez*, 913 F.2d 1506, 1513-14 (10th Cir. 1990), the Tenth Circuit held:

> Because aliens in the process of applying for legalization of their immigration status may not be deported, 8 U.S.C. §§ 1160(d) & 1255a(e), they are not unlawfully in the United States . . . Consequently, to be prosecuted under § 922(g)(5), an alien seeking amnesty under 8 U.S.C. § 1160 or § 1255 must either receive a firearm before filing an amnesty application or after such application is denied.

On the other hand, Latu's argument is contrary to the express interpretation of the Fifth Circuit, and a similar ruling in the Eighth Circuit. In *United States v. Elrawy*, 448 F.3d 309, 313 (5th Cir. 2006) the defendant argued, as does Latu, that at the time of his gun purchase, he was not "illegally or unlawfully" in the United States, because he had filed an application for adjustment of status. The Fifth Circuit rejected this contention, concluding:

> [A]n alien who has acquired unlawful or illegal status (either by overstaying a visa or illegally crossing the border without admission or parole) cannot relinquish that illegal status until his application for adjustment of status is *approved*.

*Id.* at 314 (footnote reference omitted) (emphasis added).

Similarly, in *United States v. Bazargan*, 992 F.2d 844, 848 (8th Cir. 1993), the Eighth Circuit held that a grant of

UNITED STATES v. LATU     3283

employment authorization did not "authorize" defendant's presence in the United States for purposes of § 922(g)(5).

Finally, the language in the Tenth Circuit's opinion that seemingly supports Latu's position has recently been labeled "dicta" and called into doubt. *See United States v. Atandi*, 376 F.3d 1186, 1192 & n.12 (10th Cir. 2004).

### B.

### The Applicability of *Bravo-Muzquiz*

We decline Latu's invitation to extend the language of *Bravo-Muzquiz* into a holding that Latu's presence in the United States is deemed lawful. The language in *Bravo-Muzquiz* was based, in part, on the ground that removal proceedings could not be initiated against an alien whose application for adjustment of status was pending. 412 F.3d at 1055. In fact, the challenged jury instruction upheld by the court stated, "[a]n alien who has filed an application for legalization of his immigration status is not illegally or unlawfully in the United States while the application is pending. This is so because an alien is authorized to remain in the United States while the application for legalization is pending." *Id.* at 1055 n.1. As the government pointed out, *Bravo-Muzquiz* relied on immigration statutes in effect at the time that precluded removability (known at the time as deportability) when specific applications were filed. *See Garcia*, 875 F.2d 257 *and Hernandez*, 913 F.2d 1056 *cited by Bravo-Muzquiz*, 412 F.3d at 1054. It logically follows that in *Bravo-Muzquiz*, the panel did not envision extending lawful status to aliens who, like Latu, are removable despite having filed an application for legalization of status. Latu points to no statute that renders his presence lawful because of his pending application for adjustment of status. Therefore, *Bravo-Muzquiz*, 412 F.3d at 1054, *Garcia*, 875 F.2d 257, and *Hernandez*, 913 F.2d 1506, are inapposite.

## C.

### Definition of "Illegally or Unlawfully in the United States"

[5] The Bureau of Alcohol, Tobacco, and Firearms (ATF) is charged with administering § 922. *See United States v. Lopez-Perera*, 438 F.3d 932, 934 (9th Cir. 2006). As the statute is silent as to the definition of "illegally or unlawfully in the United States," we defer to the ATF's interpretation. *See id.* at 933.

The applicable ATF regulation reads, in pertinent part:

. . .

> Alien illegally or unlawfully in the United States. Aliens who are unlawfully in the United States are not in valid immigrant, nonimmigrant or parole status. The term includes any alien —

. . .

> (b) *Who is a nonimmigrant and whose authorized period of stay has expired* or who has violated the terms of the nonimmigrant category in which he or she was admitted[.]

[6] 27 C.F.R. § 478.11(b) (emphasis added). This regulation, of course, does not necessarily foreclose Latu's argument that although he *was* unlawfully in the United States, his presence once again became lawful when he applied for adjustment of status. However, absent a statute preventing Latu's removability upon the filing of his application for adjustment of status, we can envision no interpretation that renders Latu's presence anything other than "illegal[ ] or unlawful[ ]." As applied to the facts of this case, Latu "is a nonimmigrant . . . whose authorized period of stay has

UNITED STATES v. LATU　　　　　3285

expired" and thus he meets the literal definition of the term "illegally or unlawfully in the United States." *Id.*[2]

[7] Because we conclude that Latu meets the definition of an alien "illegally or unlawfully" in the United States as interpreted by the administrative agency charged with enforcing the statute, and because the filing of an application for adjustment of status did not legalize Latu's presence, we affirm the district court's denial of Latu's motion to dismiss Count One of the Indictment.

## III.

### Latu's Conviction under § 922(g)(5)(B) (Count Two)

[8] The government confesses error regarding Latu's conviction under § 922(g)(5)(B) (Count Two). Therefore, we need not address Latu's contentions regarding the constitutionality of that statutory provision. Given the government's confession of error, we also decline to discuss the Fifth Circuit's interpretation of the interplay between § 922(g)(5)(A) and § 922(g)(5)(B). *See Elrawy*, 448 F.3d at 316.[3] In view of the government's confession of error, we reverse Latu's con-

---

[2] Because we hold that immigrants like Latu do not become lawfully present by filing for adjustments of status, we have no occasion to visit *Elrawy*'s holding that illegal status continues until the application for adjustment of status is approved.

[3] In *Elrawy*, the Fifth Circuit pointed out that § 922(g)(5)(A) prohibits aliens "illegally or unlawfully in the United States" from possessing a firearm, while § 922(g)(5)(B) prohibits aliens legally and lawfully admitted on nonimmigrant visas from possessing a firearm. *See Elrawy*, 448 F.3d at 316. The Fifth Circuit concluded that it is factually impossible for a person to be convicted under both subsections (A) and (B) for the same act of possession. *See id.* The Fifth Circuit's conclusion rests on the assumption that § 922(g)(5)(B) does not apply to immigrants initially admitted on nonimmigrant visas who subsequently change status (*e.g.* to lawful citizens or to persons illegally in the United States after overstaying their visas). As it is not necessary to the disposition of this case, we decline to adopt either interpretation.

viction for violating § 922(g)(5)(B) (Count Two). Because we reverse Latu's conviction on Count Two, remand for resentencing is appropriate. *See United States v. Bennett*, 363 F.3d 947, 955 (9th Cir. 2004) ("When a defendant is sentenced on multiple counts and one of them is later vacated on appeal, the sentencing package comes unbundled. The district court then has the authority to put together a new package reflecting its considered judgment as to the punishment the defendant deserved for the crimes of which he was still convicted.") (citations, alterations and internal quotation marks omitted).

## IV.

## CONCLUSION

The district court committed no error when it denied Latu's motions to dismiss Count One of the Indictment, and his conviction on that count is **AFFIRMED**. Pursuant to the government's confession of error, we **REVERSE** Latu's conviction on Count Two and **REMAND** for resentencing.

Conviction **AFFIRMED** as to Count One; Conviction **REVERSED** as to Count Two; **REMANDED** for resentencing on Count One.